## Patrick H. Heffron v. John J. Knickerbocker et al.

1. PRACTICE IN CHANCERY—*Original and Supplemental Bills.*— Where an agreement between two persons contemplates personal attention by each, to property, which the death of either would make thereafter impossible, if the death of such person so changes his relations with the other that his executors can maintain a bill which their decedent could not in his lifetime, such bill is an original and not a supplemental bill.

2. SAME—*Relief on a Supplemental Bill.*—On a supplemental bill no relief can be had upon a cause of action which did not exist when the original bill was filed.

3. APPELLATE COURT—*Decisions, When Not Binding.*—The Circuit is not bound to take the decision of the Appellate Court as the law in a case, where the case is not technically the same.

**Memorandum.**—In equity. Appeal from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding. Heard in this court at the October term, 1894, and affirmed. Opinion filed January 28, 1895.

OSBORNE BROS. & BURGETT, attorneys for appellant.

JNO. S. COOPER and C. H. REMY, attorneys for appellees; A. M. PENCE, of counsel.

MR. JUSTICE GARY DELIVERED THE OPINION OF THE COURT.

The appellees are executors of James J. Gore, deceased, between whom and the appellant a litigation upon the same

subject-matter as here, is reported in Heffron v. Gage, 40 Ill. App. 257, to which reference is made for the facts showing the origin of the relations between them, and the agreements made by them in regard to that subject-matter.

After that decision the bill in that case was so amended as to confine it to the hotel business, and April 27, 1891, the original bill in this cause was filed by Gore, substantially as a bill for a foreclosure, the primary relief asked being a sale to repay Gore, and failing in that, then a receiver to take all income, pay all charges, and ultimately repay Gore. Under the facts appearing in this record the only probable termination of the possession of such a receiver would have been by the property going into the hands of purchasers under a sale by mortgagees, resulting in a total loss to Gore, of his advances.

September 23, 1891, Gore died, and June 16, 1893, the present amended and supplemental bill was filed by the appellees.

Now, although the agreement between Gore and Heffron (see page 262, 40 Ill. App.) contemplated personal attention by each of them to the property, which the death of either would make thereafter impossible, yet if the death of Gore so changed the relations with Heffron, that Gore's executors could maintain a bill which Gore in his lifetime could not, then such a bill would be an original and not supplemental.

On a supplemental bill no relief can be had upon a cause of action which did not exist when the original was filed. Dan. Chy. 1515, notes. The death of Gore must therefore be laid out of view in considering the merits of this case.

The mere fact that the agreement contemplated personal attention by both, was not a cause for departing from the agreement while both lived, and therefore Gore's death is not such cause on this supplemental bill, even if it would be on an original bill by the executors.

Now, we did hold in the case cited that the relations between Gore and Heffron as to the leaseholds were not partnership relations, and so much was not *obiter*, for it was the very ground upon which we held the bill multifarious; but

when, going further, we indulged in speculation or prophecy as to the relief Gore might be entitled to in a bill which had never been filed, that was *obiter*. Even as to what was a necessary part of the opinion in that case, the Circuit Court was not technically bound to follow it, for this is a cause other than that. Sec. 17, Appellate Court Act.

Nor are we technically bound by the doctrine that the law laid down upon a first appeal binds the same court in the same case on a second, for this is not the same case. It is another suit begun after that decision.

The final decree was entered July 11, 1894, and the court found that Gore's advances and interest thereon at seven per cent then amounted to $184,140.84, and that the property had produced no income to be applied to their repayment. And the decree also finds "that Heffron had used a large amount of money advanced by Gore for the improvement of said property for his own personal use, and neglected and refused to apply the same for the purposes of said business venture, and that Gore elected and determined to end said business venture and to close up its affairs."

Now, if this misuse of funds by Heffron, and the very unsatisfactory security Gore had for his advances, entitled Gore to a sale of the property, then the decree should be affirmed; and we have not enough confidence in what we said in 40 Ill. App., as to the relief Gore might be entitled to upon a supposititious case, to induce us to act upon it.

Here is a great property going to utter loss by reason of no capable interested management. The estate of Gore has a fortune invested in it and imperiled. The case cited in 40 Ill. App. (Watson v. Taylor, 15 Ves. 10), as decided upon further hearing, is authority for the sale here. 2 Ves. & B. 299. There not the mortgaged part only, but the whole property was sold because the agreement between the parties could not be carried on. The decree is affirmed.